# City of Louisville et al. v. Chess & Wymond Co.

(Decided May 27, 1932.)

(As Modified on Denial of Rehearing Feb. 3, 1933.)

**54**

EDWARD P. HUMPHREY, HUMPHREY, CRAWFORD & MID-DLETON, and MARVIN H. TAYLOR for appellant Southern Ry. Co. in Kentucky.

TRABUE, DOOLAN, HELM & HELM, JAMES P. HELM, and ASHBY M. WARREN for appellant Louisville & N. R. Co.

JOHN E. TARRANT for appellant Louisville Ry. Co.

WILLIAM T. BASKETT and WILLIAM J. GOODWIN for appellant City of Louisville.

DAVID CASTLEMAN, CARROLL & McELWAIN, and NORMAN, QUIRK & GRAHAM for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing on appeal and Affirming on cross appeal.

The tracks of the appellants, and two of the defendants below, Louisville & Nashville Railroad Company and Southern Railway Company in Kentucky, crossed at grade some of the streets running north and south in the city of Louisville, Ky., one of which was Fourth avenue. The tracks were parallel and near each other. Some distance north of the crossing, and on the west side of Fourth avenue, there is located the manufacturing plant of appellee and plaintiff below, Chess & Wymond Company. In 1911 it entered into a written contract with the defendant Southern Railway Company in Kentucky, whereby there was constructed from the tracks of the latter a service spur or switch industrial track which ran across some of the public ways of the city, one of which was Fourth avenue, but the place of the switch crossing over that street was some distance north from the tracks of that company and those of its codefendant, Louisville & Nashville Railroad Company. Prior to the making of that contract, the city of Louisville by a duly enacted ordinance gave its consent for the spur track to be built crossing Fourth avenue at grade, but which contained this express reservation: "Said track or tracks shall be sub-

ject to removal at any time at the direction of the General Council, or the Board of Public Works.''

A representative of the railway company that made that contract, and a largely financially interested member of the plaintiff company, jointly negotiated and collaborated with the members of the city council in procuring the passage of the ordinance giving the permit for the construction of the spur track. They both, therefore, were thoroughly familiar with its contents, and, of course, they both knew of the inserted reservation contained therein. They likewise knew that the contract for the building and operation of the switch was made and entered into with reference to that permissive ordinance and in accord with its terms, and which, as we conclude, had the effect of incorporating into the contract for the construction of the switch all of the material parts of the ordinance affecting the right of the parties to construct it, and which, of course, included the inserted reservation on the part of the city. See 13 C. J. 528, sec. 487, and cases in notes 50, 51, and 52 to that text.

It was known by both parties that a permit from the city was necessary in order for the switch to cross Fourth avenue at grade, and, when the city, with the knowledge and acquiescence of all parties, imposed terms and conditions upon which the permit was given and to which they did not object and except, but constructed the switch with reference thereto, they then impliedly agreed to such terms and conditions, under the law as it is so generally stated in the publication referred to, and which embodies a well-settled and applied principle in the law of contracts as approved by courts generally and by all text-writers upon the subject.

Prior to November, 1927, the city of Louisville by its duly constituted authorities took the necessary steps to eliminate the grade crossing at Fourth avenue of the tracks of the Louisville & Nashville Railroad Company and the Southern Railway Company, and which was pursuant to the authority conferred in sections 2839a-1 to and including section 2839a-5 of the Kentucky Statutes, which were enacted in 1922, being chapter 22, page 74, of the Session Acts of that year, as amended by chapter 115, page 389, of the Session Acts of 1926. The order for the elimination of the

grade crossing was mandatory, and all necessary preliminary action on the part of the city was complied with, after which an understanding was reached by all of the parties affected thereby with reference to the plan to be adopted in order to accomplish the purpose to be attained. The plan and method so agreed upon (as well as any other that might have been agreed upon), according to the proof in the case, would necessarily result in the abandoning of the switch from the tracks of the Southern Railway Company to the plant of plaintiff. The plan was executed, the grade crossing was eliminated, and the switch was destroyed.

Thereafter plaintiff brought this action against the two railroad companies, the city of Louisville, and the street railway company, who was a party to the agreed upon plan, and it alleged in its petition that defendants had wrongfully destroyed its switch track, and that defendant Southern Railway Company had, in addition, violated its contract under which the switch track was built, and because of which plaintiff had been greatly injured and damaged by the consequent reduction in the value of its plant. It also alleged that defendants, in performing the plan to eliminate the grade crossing, had caused water to flow upon its lot, and had greatly impaired, if not destroyed, its right of ingress and egress to and from its lot from Fourth avenue, by reason of which it was also greatly injured, and it prayed judgment against defendants for the sum of $200,000, which it fixed as the total amount of its damage. Defendants filed separate answers, each of which denied the material averments of the petition and pleaded various defenses applicable to each defendant, but some of which were in common.

Following pleadings made the issues and upon trial by a jury, it, under the instructions of the court, returned a verdict in favor of plaintiff for the sum of $7,500 for the loss and destruction of the switch, but it expressly found for defendants on the latter claim above referred to in the petition. Judgment was pronounced on the verdict, and, the motions for a new trial of the respective parties having been overruled, defendants prosecute this appeal, and plaintiff has obtained a cross-appeal in this court, claiming that the amount of damages returned by the jury in its favor was grossly inadequate as shown by the proof, as interpreted by it,

and that the verdict against it on its second claim for damages was unauthorized. We will first dispose of the cross-appeal.

It is clearly shown that no right of ingress or egress was in any wise impaired by anything done in the elimination of the grade crossing, since the point where plaintiff's property is located adjacent to Fourth avenue is considerably beyond the beginning point of the depression in Fourth avenue for its passage under the railroad tracks. Likewise the proof was conflicting as to whether any water was caused to overflow any portion of plaintiff's premises because of the elimination construction, and the jury found for defendants on that issue under proper instructions from the court. No further reference, therefore, will be made to either of those items. Since we have concluded that plaintiff was not entitled to any damage for the destruction of the switch (and which will be later considered and determined in passing upon the questions raised by the original appeal), it will not be necessary to discuss the question of the alleged smallness of damages for the destruction of the switch also embodied in the cross appeal; and which brings us to a consideration of the matters involved in the original appeal.

Various questions are elaborately argued by counsel for each defendant, as well as by counsel representing plaintiff in their discussion of the question as to the right of the defendants that were not parties to the contract under which the switch was constructed, and also as to the right of the Southern Railway Company which agreed to and did construct the switch, to abandon it or cause it to be abandoned, at the time and in the manner it was done by the elimination of the grade crossing. Much space is occupied in briefs in an effort to convince us that the statute of 1922, conferring the authority upon the city to eliminate such grade crossings, could have no retroactive effect so as to in any manner directly or indirectly operate upon previously acquired rights. Likewise it is vigorously argued that certain designated sections of our Constitution, and others of our Statutes, forbid the city to incorporate in its ordinance granting the permit to build the spur switch, the absolute right to later revoke it and to cause it to be removed as it attempted to do in its permitting ordinance. However, under the conclusions we

have reached, it does not become necessary that either of those questions be determined the one way or the other, and for which reasons we refrain from doing so.

We have in a former part of this opinion pointed out that the contracting parties to the agreement under which the switch was constructed, by their conduct, incorporated into their contract all material and qualifying terms and conditions stated in the ordinance giving the permission for the switch to cross Fourth avenue. The situation then was the same as if it had been expressly stated in the contract between the Southern Railway Company and plaintiff, that "the switch should continue no longer than the city continued to permit it, and that when it withdrew such permit and required the switch to be removed, then the contract for the maintenance and operation of it should terminate."

But, it is insisted, and it so appears in the record, that there was no formal withdrawal of the permit, by the enactment of a repealing ordinance, until in 1929, nearly two years after the switch had been destroyed in the elimination of the grade crossing, and for which reason it is argued that plaintiff, in any event, would be entitled to damages for the destruction of the switch from the time it was destroyed until such formal action was taken. But we are not inclined to give the reservation in the permit ordinance such a narrow interpretation. That reservation, it will be noted, says that the switch tracks "shall be subject to removal at any time at the direction of the General Council, *or the Board of Public Works.*" (Our emphasis.) Either one of those two agencies of the city could demand the removal referred to. The board of public works do not enact ordinances. However, they are given exclusive authority to eliminate grade crossings under the statutes supra. When it required the elimination of the grade crossing on Fourth avenue, and which imperatively required the removal and elimination of the switch track from across that avenue, it, in effect, and to all intents and purposes, exercised the power reserved in the permissive ordinance as effectually as if that ordinance had been expressly repealed by the city council. The withdrawal of the permit under the reservation could be made, as we have seen, by either the city council or its board of public works, and it would be folly to hold that either of those agencies could directly and expressly revoke

the permit and cause the switch to be removed, but could not do so indirectly and by clear implication.

We therefore hold that, when the board of public works took the action that they did for the elimination of the grade crossing, and which, by whatever means it was accomplished, would result in the elimination of the switch, they exercised the right contained in the reservation of the permitting ordinance, and plaintiff, because of the facts hereinbefore stated, having agreed for the construction of its switch under such reserved right, may not insist upon damages when the permit was so withdrawn and its switch was thereby destroyed.

It follows, therefore, that the verdict in favor of plaintiff was and is erroneous, and the judgment based thereon is reversed, with directions to sustain defendants' motion for a new trial, and to set it aside for proceedings consistent herewith, and upon the cross-appeal the judgment is affirmed.